UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

DANIEL R. WALSH,

        Debtor,
_____/

HOME ACRES BUILDING SUPPLY
CO., L.L.C.,

        Plaintiff-Appellee,
v.

DANIEL R. WALSH,

        Defendant-Appellant.
_____/

Bankruptcy Case No. HG 12-01987

Case No. 1:13-CV-997

HON. GORDON J. QUIST

Adversary Proceeding
No. 12-80108

## OPINION

Appellant Daniel R. Walsh, the debtor in the bankruptcy proceeding below, appeals the bankruptcy court's judgment entered on August 15, 2013, concluding that Walsh's debt to Appellee, Home Acres Building Supply Co., L.L.C. (Home Acres), is non-dischargeable under 11 U.S.C. § 523(a)(4). For the reasons set forth below, the Court affirms the bankruptcy court's judgment.[1]

### BACKGROUND

Home Acres is a supplier of drywall and insulation products. Between October 2008 and March 2009, Home Acres supplied insulation to Walsh, an insulation subcontractor for a number of building projects. Walsh failed to pay Home Acres on nine projects, and Home Acres sued Walsh in the Emmet County Circuit court to collect the amounts due on Walsh's delinquent account. Home Acres obtained a judgment against Walsh from the state court on November 29, 2011, in the amount of $26,244.95.

---

[1] Although both parties have requested oral argument, the Court concludes that oral argument is unnecessary because the briefs and record materials from the bankruptcy proceeding provide an adequate basis for decision. W.D. Mich. LCivR 7.2(d).

On March 5, 2012, Walsh filed a petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Michigan. Home Acres objected to the dischargeability of Walsh's debt to Home Acres, and filed an adversary proceeding seeking a determination that Walsh's debt was non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). Home Acres alleged that Walsh committed fraud and/or defalcation while acting in a fiduciary capacity under the Michigan Builders Trust Fund Act (MBTFA), M.C.L. § 570.151, by failing to pay Home Acres from the contract funds he received for the nine projects. The bankruptcy court held a trial on the adversary proceeding, and on July 31, 2013, issued a bench opinion finding that Walsh committed defalcation and concluding that the debt to Home Acres is non-dischargeable under 11 U.S.C. § 523(a)(4).

This timely appeal followed.

## STANDARD OF REVIEW

Whether a debt is nondischargeable is a mixed question of fact and law. *Sorah v. Sorah* (*In re Sorah*), 163 F.3d 397, 400 (6th Cir. 1998). This court reviews the bankruptcy court's factual findings under a clearly erroneous standard, but reviews *de novo* the legal question of whether such facts correctly establish that the debt at issue is nondischargeable. *Id*; *see also Patel v. Shamrock Floorcovering Servs., Inc.* (*In re Patel*), 565 F.3d 963, 967 (6th Cir. 2009).

## DISCUSSION

Pursuant to 11 U.S.C. § 523(a)(4) a discharge under Chapter 7 of the United States Bankruptcy Code does not include a debt resulting from defalcation while acting in a fiduciary capacity. A defalcation requires the following: "(1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) a resulting loss." *In re Patel*, 565 F.3d at 968. "The MBTFA imposes a trust on funds paid to contractors and subcontractors for products and services provided under construction contracts." *Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 276 Mich. App.

2

514, 518, 742 N.W.2d 140, 143 (2007) (per curiam).[2] "The statute mandates that the trustee-recipient of the funds use them for the required purpose *first* to pay downstream laborers, materialmen, or subcontractors, before the funds are used for any other purpose." *Comfort Control Supply Co. v. Hunter* (*In re Hunter*), 437 B.R. 239, 244 (Bankr. W.D. Mich. 2010) (italics in original). A trust created under the MBTFA satisfies the requirements for a trust under § 523(a)(4). *Carlisle Cashway, Inc. v. Johnson* (*In re Johnson*), 691 F.2d 249, 252–54 (6th Cir. 1982). The Sixth Circuit has held that there is no "defalcation per se." *In re Patel*, 565 F.3d at 970. Rather, the creditor must show that the debtor was "objectively reckless in failing to properly account for or allocate funds." *Id.* (citing *In re Johnson*, 691 F.2d at 257). "[T]he objective fact that monies paid into the building contract fund were used for purposes other than to pay laborers, subcontractors or materialmen first is sufficient to constitute a defalcation under section [523] (a)(4) so long as the use was not the result of mere negligence or mistake of fact." *Id.* (internal quotation marks omitted) (alteration in original).

Walsh conceded the following facts at trial: (1) the insulation services that Walsh provided for the nine projects were in "the building construction industry,"; (2) Walsh was paid in full on each project for the services he rendered; (3) the payments that Walsh received for the nine projects were "for building construction projects"; and (4) Walsh acted as a contractor on the projects. (Dkt. 1-38 at Page ID 428; Dkt. # 22 at Page ID 579.) The only issues in dispute were whether Walsh misappropriated any of the trust funds that he had received on the nine projects and whether, through

---

[2]Section 1 of the MBTFA provides:

In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

M.C.L. § 570.151.

its conduct, Home Acres had waived its right to claim an interest in the trust funds. (Dkt. # 22 at Page ID 579.) After disposing of the waiver argument, the bankruptcy court gave its findings supporting its conclusion that Walsh committed a fiduciary defalcation under § 523(a)(4). The court first found that, at all relevant times, Walsh knew that he had underbid each of the nine projects. In other words, Walsh knew that he would lose money on all of the projects. (*Id.* at 13, 15.) Pertinent to Walsh's knowledge, the bankruptcy court noted that Walsh's bank debited his account 155 times during the relevant period for overdrawing his account. (*Id.* at 14.) Second, the court observed that, rather than being removed from the business operations, Walsh was "a hands-on owner," and must have realized almost immediately that he was not going to make money on any of the projects. (*Id.* at 15.) Finally, the court concluded that Walsh used funds generated by the nine projects to pay expenses associated with other non-Home Acres projects, as well as general business and personal expenses. (*Id.* at 18–23.)

Appellant's sole issue on appeal is whether the bankruptcy court failed to apply the state of mind requirement for defalcation under § 524(a)(4), as set forth in *Bullock v. BankChampaign, N.A.*, __ U. S. __, 133 S. Ct. 1754 (2013). The Court explained this requirement as follows:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term [defalcation] requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will violate a fiduciary duty. ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985). See *id.*, § 2.02 Comment 9, at 248 (explaining that the Model Penal Code's definition of "knowledge" was designed to include "'wilful blindness'"). That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."

*Id.* at 1759–60 (italics in original).

Considering the foregoing facts, the bankruptcy court concluded that "[f]inding . . . that Mr. Walsh was grossly reckless is not that difficult for this Court to do, given his admission that each of the projects in question was a losing proposition." (Dkt. # 22 at Page ID 586.) That is, the bankruptcy court concluded that—by using the contract funds to pay non-project expenses with the knowledge that each project would result in a loss—Walsh was at a minimum grossly reckless to whether his conduct would violate his fiduciary duty. In other words, by using the funds to pay non-trust-fund beneficiaries, Walsh ignored a substantial risk that he would violate his fiduciary duty to Home Acres.

Given the bankruptcy court's findings and conclusions, this Court concludes that the bankruptcy court applied the proper state of mind requirement under *Bullock*. The fact that the bankruptcy court did not mention *Bullock* or purport to apply its holding is immaterial, because the bankruptcy court's findings and conclusions adequately demonstrate that the outcome is consistent with *Bullock*. That is, the bankruptcy court found a "state of mind . . . involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 1757. Thus, Walsh has failed to demonstrate any error in the bankruptcy court's judgment.

## Conclusion

For the foregoing reasons, the Court will affirm the bankruptcy court's conclusion that Walsh's debt to Home Acres is non-dischargeable under 11 U.S.C. § 523(a)(4).

An Order consistent with this Opinion will enter.

Dated: March 5, 2014  /s/ Gordon J. Quist  
GORDON J. QUIST  
UNITED STATES DISTRICT JUDGE